```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  NORTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION
```

FILED
03 SEP 22 PM 3:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

VIVIAN ANN HILL,            )
                            )
        Plaintiff,          )
                            )
vs.                         )     Case No. CV-02-B-2614-S
                            )
CITY OF BIRMINGHAM BOARD    )
OF EDUCATION,               )
                            )
        Defendant.          )

ENTERED
SEP 22 2003

## MEMORANDUM OPINION

The magistrate judge filed his report and recommendation on March 20, 2003, addressing the plaintiff's motion for entry of a default judgment against the defendant. Plaintiff filed her objections to the report's recommended relief on April 3, 2003, and defendant filed its objections to the report and recommendation and its motion to set aside default on April 7, 2003. Having now carefully reviewed and considered *de novo* all materials in the court file, including the non-jury hearing on the plaintiff's motion for entry of a default judgment, conducted by the magistrate judge on March 13, 2003, the court finds the objections are due to be overruled, the motion to set aside the default denied, and final judgment entered for plaintiff as recommended by the magistrate judge.

18

I. Procedural Background

A thorough understanding of the procedural history of this case is helpful to an understanding of its resolution. Plaintiff filed her complaint in this action on October 24, 2002, asserting claims of race discrimination in employment under Title VII and 42 U.S.C. § 1983 and naming as the sole defendant the City of Birmingham Board of Education ("Board"). She requested certified mail service of process, and a copy of the complaint and summons was delivered to the Board and signed for by a mail clerk on October 25, 2002. The Board never appeared or answered the complaint, and on December 16, 2002, plaintiff moved for entry of default and for default judgment. Default was entered by the clerk on December 17, 2002.

Because this case initially was assigned to a magistrate judge under the court's General Order for Referral of Civil Matters to the United States Magistrate Judges, the magistrate judge entered an order on January 3, 2003, setting the motion for entry of a default judgment for hearing on January 28, 2003. That order explicitly directed the clerk to send a copy of it to "the Birmingham Board of Education, 2015 Park Place North, Birmingham, Alabama 35203."

Following the appearance of plaintiff's counsel, but no one representing the defendant, at the hearing on January 28, 2003, the

magistrate judge entered an order on January 30, 2003, setting a jury trial on the plaintiff's request for damages and relief in her motion for default judgment for March 11, 2003.  Once again the magistrate judge's order explicitly directed the clerk to mail a copy to "Superintendent Waymon Shivers at the Birmingham Board of Education, 2015 Park Place North, Birmingham, Alabama 35203."  In anticipation of the trial, the magistrate judge entered an order on March 5, 2003, notifying the parties of their option to consent to allow the magistrate judge to exercise full dispositive authority under 28 U.S.C. § 636(c); a copy of this order also was sent to **"Interim Superintendent Wayman Shivers, at the Birmingham Board of Education, 2015 Park Place North, Birmingham, Alabama 35203."** (Bold in original).

Despite the plaintiff's express consent and the failure of the defendant to appear or otherwise defend the action, the magistrate judge became concerned that he could not exercise § 636(c) authority over a defendant who had not appeared and was in default. Consequently, he entered an order on March 7, 2003, directing the clerk to reassign the case to a district judge.  A copy of that order also was mailed to **"Interim Superintendent Wayman B. Shivers, Jr., Birmingham Board of Education, Administration Building, 2015 Park Place North, Birmingham, Alabama 35203."**  (Bold in original). In response to the Order of Reassignment, the plaintiff filed a motion that same day, requesting the case be referred to the

3

magistrate judge to hold a non-jury hearing on the plaintiff's request for damages and relief in the motion for entry of default judgment. Although a copy of that motion apparently was not served on the defendant[1], the court's subsequent order of March 10, 2003, referring the matter to the magistrate judge for hearing and a report and recommendation, was mailed to **"Interim Superintendent Wayman B. Shivers, Jr., Birmingham Board of Education, Administration Building, 2015 Park Place North, Birmingham, Alabama 35203."** (Bold in original).

On March 11, 2003, plaintiff appeared at the hearing before the magistrate judge and offered substantial documentary and testimonial evidence relating to her damages and other relief sought. No one appeared for the defendant. Three days later, however, on March 14, 2003, defendant appeared for the first time, filing its motion to set aside default judgment. The magistrate judge filed his report and recommendation on March 20, 2003, recommending entry of default judgment for the plaintiff for damages and certain injunctive relief. Thereafter, the parties filed their objections, which are now under consideration.

---

[1] FRCP 5 relieves a party of the obligation to serve an opposing party in default. The rule states in part, "No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4."

4

II.  <u>Defendant's Motion to Set Aside Default</u>

The first issue the court must address is whether the default entered by the clerk on December 17, 2003, should be set aside. Although the magistrate judge has recommended entry of a default judgment, no judgment by default has yet been entered.[2] Consequently, the standard for determining whether to set aside the default is found in FRCP 55(c), which states, "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  Because, as stated, no *judgment* by default has yet been entered, the court must ascertain whether there is "good cause" to set aside the default.

Whether something constitutes "good cause" for FRCP 55(c) purposes depends upon the circumstances of each case. The United States Court of Appeals for the Eleventh Circuit has written:

> "'Good cause' is a mutable standard, varying from situation to situation. It is also a liberal one--but not so elastic as to be devoid of substance." <u>Coon v. Grenier</u>, 867 F.2d 73, 76 (1st Cir. 1989). We recognize that "good cause" is not susceptible to a precise formula, but some general guidelines are commonly

---

[2] Although the magistrate judge could only recommend the entry of a default judgment, the fact that a hearing was conducted before him and a report and recommendation filed weighs in the balance of the assessment of "good cause." While the magistrate judge's actions do not constitute a judgment, the unnecessary expenditure of court time and resources caused by defendant's default necessarily implicates whether defendant's showing is sufficient, under the circumstances of this case, to rise to the level of Rule 55(c)'s "good cause."

5

applied. Id. Courts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense. Rafidain Bank, 15 F.3d at 243; see also Robinson v. United States, 734 F.2d 735, 739 (11th Cir. 1984). We note, however, that these factors are not "talismanic," and that courts have examined other factors including whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default. E.g., Dierschke v. O'Cheskey, 975 F.2d 181, 184 (5th Cir. 1992). "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." Id. However, if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief. Shepard Claims Service, Inc. v. William Darrah & Associates, 796 F.2d 190, 194-95 (6th Cir. 1986).

Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Avion, 88 F.3d 948, 951-952 (11th Cir. 1996). The "good cause" assessment is not an empty exercise; the defaulting party is required to actually prove a genuine "good" cause for the default. See African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201 (11th Cir. 1999)("[A] district court may set aside an entry of default only if the defaulting party can provide a good reason for the district court to do so"). A preference for determination of cases on the merits, by itself, is not a sufficient "good cause" to set aside a default. The court of appeals explained in Ward:

> The district court, in granting the defendants' motion to set aside the default and the default judgment, provided no reason for granting the motion other than its belief

that the case ought to be decided on the merits. This is
certainly a noble sentiment; inherent in the adversary
system of justice is the idea that each side ought to be
heard prior to a court's entry of final judgment.
However, that same system requires that the court have
the power to compel parties to appear before it. The
threat of default (and default judgment) is the court's
primary means of compelling defendants in civil cases to
appear before the court. If these defaults could be put
aside without cause, the threat of default would be
meaningless, and courts would lose much of their power to
compel participation by civil defendants.

African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201, 1202-03 (11th Cir. 1999).

Keeping in mind the various factors that have been considered as part of the "good cause" assessment, the court does not deny that many weigh in favor of setting aside the default. It may well be true that defendant has a meritorious defense to all or part of the plaintiff's claim, although there is significant, credible evidence supporting plaintiff's position as well.[3] Further, setting aside the default would prejudice the plaintiff, although in a relatively minor way. Her time, effort, and expense of

---

[3] For example, Mr. Beasley's affidavit acknowledges that plaintiff inquired about an emergency certification and that he indicated she should work with personnel about obtaining one. Of course, the first step in obtaining an emergency certification is a recommendation by the school principal. This confirms that plaintiff was not hired as an ordinary substitute teacher, but under circumstances in which all were aware that plaintiff would seek to be employed as a regular, full-time teacher under an emergency certification. Plaintiff's claim is that Mr. Beasley refused to recommend her for emergency certification out of a racially motivated animus.

marshaling evidence in support of her claim for relief and presented to the magistrate judge will have been wasted. Although the recommended amount of damages is a large sum of money, over $66,000, it is relatively modest for an organization as large as the Birmingham Board of Education, notwithstanding its budget deficit. Although the Board is a public entity, the employment dispute here is essentially a private matter, not involving a significant public interest. But the factor that cannot escape the court's attention is the culpability of the defendant in failing to promptly respond to the filing of the lawsuit. Defendant acknowledges that it was served with process on October 25, 2002; it does not dispute that the person signing for the certified mail service was authorized to do so and was trained to forward important legal documents promptly. Indeed, defendant now asserts that the mail clerk who received the summons and complaint *did* forward it to a secretary in the defendant's Personnel Department, where it disappeared. There is *no* explanation for what happened to the summons and complaint from that point on. In effect, there is no explanation for the mishandling of the summons and complaint that can even be colored as "good cause."

The culpability of the defendant, however, goes much further. No fewer than five separate orders or notices were mailed to the Board or its Interim Superintendent about this lawsuit between January 3 and March 10, 2003, only the last of which finally

8

provoked the defendant into responding.  No explanation has been offered for why these orders and notices did not provide the defendant with ample opportunity to appear and defend its interests.  Defendant has not even attempted to explain why these orders and notices were ignored.  There is no suggestion that the first four of the five documents were not delivered to the Board or the Interim Superintendent, even though they were correctly addressed in the same fashion as the final one that did get through.  The court can only conclude they were received and either willfully or recklessly ignored.  The magistrate judge did almost everything but waive a red flag at the defendant to get its attention, to no avail.  As the court of appeals said in <u>Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Avion</u>, 88 F.3d 948, 951-952 (11th Cir. 1996), "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief."

    The court finds, therefore, that the defendant has failed to show "good cause" warranting setting aside the default entered on December 17, 2002.  The motion to set aside the default will be denied, and defendant's objections to the report and recommendation will be overruled.  A default judgment will be entered in favor of plaintiff and against the Board in a separate document complying with FRCP 58.

9

II. <u>Plaintiff's Objections</u>

Plaintiff also has filed objections to the magistrate judge's report and recommendation, in particular his refusal to recommend that plaintiff's relief include an injunction requiring the Board to reinstate her to employment as a high school math teacher. Having reviewed the evidence and arguments on this question, the court agrees with the magistrate judge that whether plaintiff would have been employed beyond the 2001-2002 academic year, even in the absence of illegal discrimination, is too speculative to support reinstatement.

Under the theory of plaintiff's complaint, she was denied employment under an "emergency certificate" due to Mr. Beasley's racial discrimination against her. Even plaintiff's evidence is incontrovertible that teaching appointments under an emergency certificate can last no more than one academic year and cannot be renewed or extended. Thus, even without any discrimination, she could have expected to be employed under an emergency certificate only until the end of the 2001-2002 academic year; she had no entitlement or legitimate expectation of employment beyond that time and, indeed, was prohibited by Alabama law from being so employed under an emergency certificate. Her lack of employment beyond the expiration of the academic year had nothing to do with discrimination and everything to do with the lack of a suitable teaching certificate.

Plaintiff speculates that, if she had not been denied her employment under an emergency certificate during the 2001-2002 academic year, she could have afforded to enroll in an Alabama Fifth-Year Program and be certified to teach under an "alternative certificate" during the 2002-2003 school year and on into the future. But, again, the evidence is clear that she did not enroll in such a program and, in fact, she did not obtain an alternative certificate. Further, even if she had enrolled in a program, there is no proof that she would have succeeded in obtaining an alternative certificate or that, even with an alternative certificate, the Board would have rehired her for the next academic year.

The court of appeals has stated a rule dealing with back pay in limited-term employment circumstances. Analyzing several cases in which Title VII plaintiffs sought back pay for employment allegedly beyond a limited term of employment, the court stated the following burden of proof:

> Generalizing these holdings to a broad rule of Title VII damages, we conclude that the proper allocation of proof in cases involving fixed-term contracts is that a plaintiff must initially introduce some evidence showing that the economic injury resulting from the discharge extended beyond the employment term. As in the teacher discharge cases, this proof may consist of no more than a showing that the particular plaintiff's contract had been renewed in the past, that contracts of similarly situated employees had been renewed, or that the employer had made a promise of continued employment. Once the plaintiff carries this burden, and thus in the words of Marks v. Prattco, [633 F.2d 1122 (5th Cir. 1981)],

11

> establishes the damages resulting from the discriminatory
> acts, then the burden shifts to the defendant to show by
> a preponderance of the evidence that the plaintiff would
> not have remained in employment beyond the contract term.

Walker v. Ford Motor Co., 684 F.2d 1355, 1362 (11th Cir. 1982)(holding that plaintiff was not entitled to award of back pay covering period after expiration of 18-month training contract); see also Holley v. Northrop Worldwide Aircraft Services, Inc., 835 F.2d 1375 (11th Cir. 1988)(holding plaintiff not entitled to back pay for period beyond expiration of term of government contract); Welch v. University of Texas, 659 F.2d 531 (5th Cir., Unit A, 1981)(holding back pay was limited properly to the term of the grant under which plaintiff was paid). Even though none of these cases addresses the question of reinstatement of employment that, as originally held, was for a limited term, the same rationale applies. Plaintiff is entitled to relief from all effects of the illegal discrimination, but she is not entitled to be placed in a better position than she would have occupied if the discrimination had not taken place. She bears the burden of proving that it was illegal discrimination that kept her from being employed beyond the 2001-2002 academic year. Because plaintiff had the initial burden of showing an injury attributable to the illegal discrimination that lasted beyond the term of the one-year employment under an emergency certificate, and because her evidence failed to show that she was qualified for employment beyond the 2001-2002 academic

year, she has not carried her initial burden under <u>Walker</u> and is not entitled to reinstatement, the one-year term for which she was employed having expired.

The magistrate judge's calculation of back pay takes fully into account the one-year employment contract under which plaintiff was hired. He has recommended that she be paid the difference between what she was actually paid and what she would have been paid if she had worked the entire academic year in the same capacity and at the same pay as her comparator, Teresa Jackson.[4] Similarly, the magistrate judge correctly recognized that plaintiff had no assurances of employment beyond the 2001-2002 academic year; indeed, because her desired emergency certification could not last longer than one year, there was a real doubt that she would be employed more than one year. In any event, there is no basis for finding that she would have qualified to teach under the alternative certification for the next academic year. In an attempt to show her entitlement to employment beyond the 2001-2002 academic year, plaintiff has strung together too many "ifs" and "maybes." Whether she would have succeeded in obtaining

---

[4] The magistrate judge found that plaintiff is entitled to $27,321.93 in back pay, $2,527.28 in interest on the back pay, and $2,000.00 in expenses caused by lost employment benefits. The magistrate judge's calculation of prejudgment interest extended only to March 2003. Further extending that calculation to August 2003, plaintiff is entitled to $2,920 in prejudgment interest.

13

alternative certification is entirely too speculative to base reinstatement upon.

Consequently, the plaintiff's objections are due to be overruled and the magistrate judge's report and recommendation is due to be adopted and accepted. A separate order will be entered denying the Board's motion to set aside the default, overruling plaintiff's and defendant's objections to the report and recommendation, and entering judgment for the plaintiff for the relief recommended by the magistrate judge. Plaintiff also is DIRECTED to file her application for attorney's fees and expenses within fourteen (10) days after entry of this Order.

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this 22nd day of September, 2003.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE